## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 12-24441-CIV-MORENO/OTAZO-REYES

Pruco Life Insurance Company,

                Plaintiff,

v.

Gary A. Richardson; Life Brokerage Equity
Group, LLC, US Bank, as Securities
Intermediary; and John Does 1-10,

                Defendants.

## RESPONSE OF PLAINTIFF PRUCO LIFE INSURANCE
## COMPANY TO THE MOTION TO DISMISS OF DEFENDANT
## U.S. BANK, AS SECURITIES INTERMEDIARY

Plaintiff Pruco Life Insurance Company ("Pruco") hereby submits this response in opposition to the motion to dismiss of defendant U.S. Bank, as securities intermediary [D.E. # 15].

## INTRODUCTION

U.S. Bank's motion to dismiss raises arguments that have been repeatedly rejected by courts in this District.  U.S. Bank either ignores these cases, or casually dismisses them as "not binding or persuasive authority," while proceeding to rely on a litany of inapposite decisions.  The holdings of actually analogous cases, however, establish that U.S. Bank's motion to dismiss should be denied.

On December 17, 2012, Pruco filed its five-count Complaint [D.E. # 1] against defendants U.S. Bank, Gary Richardson ("Richardson"), Life Brokerage Equity Group ("LBEG") and John Does 1-10.  In the Complaint, Pruco has pleaded that Richardson, LBEG and others conspired to solicit and recruit the participation of Florida senior citizen Rosalind Guild in an illegal stranger-originated life insurance ("STOLI") scheme.  Under this scheme, the STOLI conspirators procured from Pruco two $5 million life insurance policies on Ms. Guild's life (the "Guild Policies"), pursuant to an agreement or understanding that the Guild Policies would be sold on the secondary market to a stranger-investor with no insurable interest in Ms. Guild's life (in violation of Florida insurable interest law).  U.S. Bank, as securities intermediary, is that stranger-investor and is currently the owner of the beneficial interest in the Guild Policies.

On February 6, 2013, U.S. Bank filed its motion to dismiss Count I of the Complaint, which seeks a declaratory judgment that the Guild Policies lacked an insurable interest at inception and are therefore void *ab initio*.[1]  Mot. to Dismiss, D.E. # 15.  U.S. Bank raises four arguments in its moving papers: (1) Pruco's claims are barred by the two-year incontestability clauses in the Guild Policies and/or the applicable Florida statute of limitations; (2) the allegations in the Complaint establish that

---

[1] Count I is the only count of the Complaint asserted against U.S. Bank.

PHLIT/ 1844258.4

the Guild Policies had a proper insurable interest at inception; (3) Count I fails because U.S. Bank is a *bona fide* purchaser for value of the Guild Policies; and (4) Pruco's request to retain the premium that has been paid to it for the Guild Policies should be stricken.  Each of these arguments is without merit.  Recent decisions applying Florida law have held that a suit seeking to declare a life insurance policy void *ab initio* is not barred by the two-year contestable period because a policy that lacks an insurable interest is void from inception – *i.e.*, neither the policy, nor the incontestability clause that U.S. Bank seeks to rely upon, ever existed in the first instance.  Additionally, Pruco's allegation that the Guild Policies were procured in bad faith pursuant to an understanding that they would ultimately benefit a stranger-investor, if proven, would establish that the Guild Policies lacked an insurable interest at inception.  Similarly, in arguing that it is a *bona fide* purchaser for value, U.S. Bank again ignores Pruco's allegations that the Guild Policies are void *ab initio*.  It is well settled that one cannot be a *bona fide* purchaser of an asset that was void at its inception.  Further, Pruco's request to retain premiums is proper because parties to contracts that are void *ab initio* (as opposed to voidable) must be left where the Court finds them.  Finally, U.S. Bank's motion papers raise factual questions that are inappropriate at the motion to dismiss stage.

## FACTUAL BACKGROUND

### I.    STOLI TRANSACTIONS IN GENERAL

In recent years, a secondary market for life insurance has emerged, in which existing life insurance policies may be sold to third parties who lack an insurable interest in the life of the insured.  Compl. ¶¶ 14-15.  This type of sale, which is typically referred to as a "life settlement," can be lawful, provided that the policy was procured for legitimate purposes and that there was an insurable interest at the inception of the policy.  *Id.*  With the emergence of this secondary market, however, there has been a proliferation of life insurance policies that are sought not to meet

legitimate insurance needs, but solely for re-sale to stranger-investors on the secondary market. These STOLI policies are illegal wagering contracts. *Id.* at ¶¶ 19-22.

In many instances, STOLI policies are tainted by fraud in the application and/or other supporting documentation presented to, and relied upon by, the insurers in determining whether to issue a policy. Compl. ¶ 21. Promoters of STOLI policies provide the insurer with false information during the application process to obtain a policy with a larger face value than would legitimately be issued. *Id.* This maximizes the STOLI promoters' profit when the policy is sold to investors. *Id.*

## II.   THE STOLI SCHEME INVOLVING THE GUILD POLICIES

In or around September 2005, Richardson, LBEG and others working in concert with them commenced a STOLI scheme to procure the Guild Policies. Compl. ¶ 23. Pursuant to the STOLI scheme, Ms. Guild was advised by Richardson and those working on his behalf that she could obtain free life insurance and/or that she would be compensated for her participation in the transaction with a percentage of the face amount of the policies issued. *Id.* at ¶ 27. After securing Ms. Guild's participation, Richardson and LBEG provided false information on the applications for the Guild Policies and in documents sent to Pruco in conjunction with the applications, which was intended to induce Pruco to issue the Guild Policies. *Id.* The sole purpose for the Guild Policies was to ultimately benefit an investor with no insurable interest in Ms. Guild's life. *Id.* at ¶ 30.[2]

On or about September 29, 2005, Pruco received the applications for the Guild Policies. Compl. ¶ 40. Ms. Guild never read the applications before signing them, and had no understanding that a total face amount of $10 million in insurance coverage was being sought. In fact, the

---

[2]  In order to make the procurement of the Guild Policies appear legitimate and to conceal the scheme from Pruco, the scheme also involved the creation of the Rosalind Guild Family Insurance Irrevocable Trust (the "Guild Trust"), which would be the record owner and beneficiary of the Guild Policies. Compl. ¶ 28. Despite the fact that the trust bore her name, Ms. Guild was not involved in the formation of the Guild Trust. Indeed, Ms. Guild did not know the identity of the trustee of the Guild Trust when the applications for the Guild Policies were submitted. *Id.* at ¶ 29.

3

applications were completed and submitted by Richardson and/or those acting on his behalf.  *Id.* at ¶ 41.  The applications and documents submitted in conjunction with the applications contained numerous misrepresentations intended to induce Pruco to issue the Guild Policies.  *Id.* at ¶¶ 39-42, 47-56.

Because the applications for the Guild Policies sought so much insurance coverage, Pruco required third party verification of Ms. Guild's income and net worth.  Compl. ¶ 57.  To satisfy this requirement, Richardson and those working with him contrived a confidential financial statement purporting to establish that Ms. Guild had a net worth sufficient to justify $10 million in insurance coverage (the "Financial Statement").  *Id.*  In fact, Ms. Guild's net worth at that time was far below the $19.2 million represented on the Financial Statement.  *Id.* at ¶ 63.  On or about October 10, 2005, the phony Financial Statement was sent to Pruco in support of the applications.  *Id.* at ¶ 58.  The Financial Statement is on the letterhead of a company called Infinity Financial Group and is purportedly signed by "Mark Tarshis – Financial Advisor."  *Id.*  According to an affidavit from Mr. Tarshis, however, the Financial Statement was fraudulent and Mr. Tarshis' signature on it was forged.  *Id.* at ¶ 59, Exh. F.

In reliance upon the misrepresentations made to Pruco during underwriting, Pruco ostensibly issued the Guild Policies, each with a face amount of $5 million (policy numbers V1200032 and V1200034), on October 21, 2005.  Compl. ¶ 67.  On or about February 13, 2008, Pruco received a request to change the ownership and beneficiary of the Guild Policies to US. Bank.  *Id.* at ¶ 70.  Pruco confirmed the requested ownership and beneficiary change on February 27, 2008.  *Id.*

## **LEGAL STANDARD**

In ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and assume the veracity of well-pleaded factual allegations.  *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir.

4

2010).  This tenet, however, does not apply to legal conclusions, which "must be supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). At a minimum, a plaintiff must present "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  *Id.* at 556.

## ARGUMENT

### I.   THE INCONTESTABILITY PERIOD DOES NOT APPLY TO LIFE INSURANCE POLICIES THAT ARE VOID *AB INITIO* AS ILLEGAL WAGERING CONTRACTS

U.S. Bank's first argument – that Pruco's declaratory judgment claim is barred by the incontestable provisions in the Guild Policies – has been advanced and rejected repeatedly by courts in this district.  Mot. to Dismiss at 7-12.  In making this argument, U.S. Bank ignores the fact that the Complaint seeks a declaration that the Guild Policies are void *ab initio* and instead attempts to recast Pruco's declaratory judgment action as a fraud claim.  *Id.* at 10 ("Pruco's **real** argument is that it was **defrauded** during the application process. . . .") (emphasis in original).  U.S. Bank is mistaken – the allegations in the Complaint establish that Pruco's "real" argument is that the Guild Policies lacked an insurable interest at inception and are void *ab initio*, but U.S. Bank knows that if it concedes this point, its argument based on the two-year contestable period is rendered moot.

### A.   Florida Follows The Majority Rule Allowing Lack of Insurable Interest Claims To Proceed Regardless of The Expiration of the Contestable Period

U.S. Bank fails to recognize a critical distinction between policies that are, as a matter of law, void *ab initio* and policies that are, at the insurer's option, voidable for fraud or misrepresentation. While policies that are voidable are subject to the two-year contestable period, policies that are void *ab initio* are legal nullities.  *See Schneberger v. Wheeler*, 859 F.2d 1477, 1480 (11th Cir. 1988) ("If a contract or note is void *ab initio*, it is a nullity."); 17A C.J.S. *Contracts* § 137 ("A contract that is

void never attains legal effect … whereas a contract that is voidable is one where one or more of the parties have the power, by the manifestation of an election to do so, to avoid the legal relations created by the contract.").  Because a policy that is void *ab initio* is a nullity, all of its provisions, including the incontestability clause, are likewise void *ab initio* and unenforceable.  *See Pruco Life Ins. Co. v. Brasner*, Civ. No. 9:10-80804, 2011 WL 134056 at *6 (S.D. Fla. Jan. 7, 2011) ("[T]his Court agrees with Judge Ungaro's opinion in *Rubenstein* that the majority view allowing a lack of insurable interest claim to proceed despite the expiration of an incontestability clause is the proper view under Florida law."); *John Hancock Life Ins. Co. v. Rubenstein*, No. 1:09-cv-21741-UU, D.E. # 28 at 5 (S.D. Fla. Sept. 1, 2009) ("if the Policy is *void ab initio* because an insurable interest is lacking, the incontestability clause would be of no effect.") (attached hereto as Exhibit A); *Sciarretta v. The Lincoln Nat'l Life Ins. Co.*, 9:11-cv-80427-DMM, D.E. # 32 at 5-6 (S.D. Fla. Sept. 9, 2011) ("Since Lincoln states in its Counterclaim that it 'seeks a declaration that the Cotton Policy is void *ab initio* due to a lack of insurable interest at inception,' this Court finds that the counterclaim is not barred by Florida's incontestability clause.") (attached hereto as Exhibit B).[3]

Pruco alleges in its Complaint that the Guild Policies were procured in bad faith pursuant to an agreement or understanding that they would ultimately benefit stranger-investors lacking an insurable interest in Ms. Guild's life.  Compl. ¶¶ 74-81.  Such STOLI policies are against public policy and void *ab initio*.  *See Brasner*, 2011 WL 134056 at *4; *Meerdink v. American Ins. Co.* 188 So. 764, 766 (Fla. 1939) ("[A] person shall have an insurable interest before he can insure: a policy issued when there is no such interest is void."); *Atkinson v. Wal-Mart Stores, Inc.*, Civ. No. 08-691, 2009 WL 1458020 at *3 (M.D. Fla. May 26, 2009) ("[An] insurable interest is necessary to the

---

[3]  *See also* 44 C.J.S. *Insurance* § 352 (2007) ("A policy issued to a person who has no insurable interest is void from its inception, and is not rendered valid by a clause declaring it incontestable after the lapse of a specified period of time."); 44 Am. Jur. 2d *Insurance* § 767 (2003) ("An insurance policy which is invalid as being violative of public policy cannot be validated by the agreement of the parties that it shall be incontestable after a stated time.").

validity of an insurance contract and, if it is lacking, the policy is considered a wagering contract and void *ab initio* as against public policy.") (*citing Knott v. State ex rel. Guaranty Income Life Ins. Co.*, 186 So. 788, 789-790 (Fla. 1939)).  Since Pruco's allegations would establish that the Guild Policies are void *ab initio*, the incontestability clauses contained in the policies do not bar Pruco's claim.[4]
*Brasner*, 2011 WL 134056 at *6; *Rubenstein*, Exh. A at 5; *Sciarretta*, Exh. B at 5-6.

### B.   U.S. Bank Relies Upon Inapposite Case Law

U.S. Bank's argument that Pruco's claim is barred by the Guild Policies' incontestability provisions is premised almost entirely on the Eleventh Circuit's decision in *Allstate Life Ins. Co v. Miller*, 424 F.3d 1113 (11th Cir. 2005).  U.S. Bank's reliance on *Miller*, however, is an attempt to pound a square peg into a round hole.  *Miller* did not involve allegations that a policy lacked an insurable interest and was therefore void *ab initio*.  Instead, the *Miller* case involved an imposter appearing in place of the proposed insured for the purposes of the required pre-policy issuance medical exams.  *Miller*, 424 F.3d 1114.  In fact, the Eleventh Circuit's holding in *Miller* rested on an express rejection of the insurer's argument that the life insurance policy at issue was void *ab initio*. *Id*. at 1116.  The court made clear its view that fraudulent misrepresentations – including an imposter appearing for the medical exam – render the policy voidable, not void *ab initio*.  *Id*. at 1117 ("[W]e agree with the district court that the 'imposter defense' is merely a species of fraud, indistinguishable from the use of an imposter for incontestability purposes.").[5]  Where insurable interest is at issue,

---

[4]  U.S. Bank ostensibly argues that the incontestability clause in the Guild Policies and Fla. Stat. § 627.455 give this Court two independent grounds upon which to find that the Guild Policies is incontestable.  Mot. to Dismiss at 8.  U.S. Bank misunderstands the purpose of Florida's incontestability statute, which does not create a statutory contestable period, but instead merely mandates that every contract of insurance must contain an incontestable clause.  *See Rubenstein* at *5, n.4 ("[A]lthough Florida Statute § 627.455 prescribes the incontestability clause language required in all life insurance policies, it does not create a statutory incontestability period.").  Therefore, the two-year contestable period only arises from the incontestability clauses in the Guild Policies.  *Id*. at *5.

[5]  The *Miller* holding expressly recognized the fact that the incontestability clause must have gone into effect in order to bar an insurer's rescission claim.  *See Miller*, 424 F.3d at 1115 ("Florida's appellate courts have uniformly held that once the incontestability clause has become effective, insurers are barred from attempting to rescind or cancel the insurance policy based on allegations that the insured engaged in fraud or misrepresentation.") (citing *Kaufman v. Mut. of Omaha*

however, Florida courts have uniformly allowed challenges notwithstanding incontestability clauses. *Brasner*, 2011 WL 134056 at *6; *Rubenstein*, Exh. A at 5; *Sciarretta*, Exh. B at 5-6.[6]

The other cases cited by U.S. Bank also involve voidable policies that were rescindable at the insurer's option, rather than policies that were legal nullities.  Mot. to Dismiss at 9.  U.S. Bank first cites *Prudential Ins. Co. of Am. v. Prescott*, 176 So. 875, 876 (Fla. 1937), in which the insurer sought to rescind a policy on the ground that the insured had knowingly misrepresented material facts relating to his health.  Next, it moves to *Pruco Ins. Co. of Am. v. Rhodriquez*, 285 So. 2d 689, 689 (Fla. Dist. Ct. App. 1973) and *DiFranco v. Nat'l Found. Life Ins. Co.*, 551 So. 2d 535, 536 (Fla. Dist. Ct. App. 1989), in which the insurers sought to rescind policies based on medical misrepresentations in the applications for the policies.  Then, U.S. Bank relies upon *Great S. Life Ins. Co. v. Porcaro*, 869 So. 2d 585, 586 (Fla. Dist. Ct. App. 2004), where the insurer sought to avoid payment on the policy due to fraud surrounding the insured's death.  Finally, U.S. Bank concludes its tour through inapposite cases with *Bankers Sec. Life Ins. Soc. v. Kane*, 885 F.2d 820, 821-22 (11th Cir. 1989), in which, similar to *Miller*, the insurer sought to rescind the policy due to a misrepresentation related to the identity of the proposed insured.  In each of these cases, the insurer selected the remedy of rescission – a remedy that is not sought by Pruco in the Complaint.  None of these cases involved life insurance policies alleged to have been issued without an insurable interest

---

*Inc. Co.*, 681 So.2d 747, 750-753 (Fla. Dist. Ct. App. 1996) (emphasis added).  If a policy lacked an insurable interest at inception, the incontestability clause never becomes effective.

[6] Although not included in U.S. Bank's brief, the Eleventh Circuit has held that an incontestability clause does not bar insurers from raising the defense that a life insurance policy is void *ab initio*.  *See Wood v. New York Life Ins. Co.*, 783 F.2d 990 (11th Cir. 1986).  In *Wood*, decided under Georgia law, the court noted that the incontestability clause of the policies at issue "presuppose[d] the existence of a contract 'in force'."  *Id.* at 996.  The court concluded that "an insurance contract that is void *ab initio* as against public policy is never 'in force,' cannot be ratified or affirmed, and is not subject to being enforced by the courts."  *Id.* (citing *Obartuch v. Sec. Mut. Life Ins. Co.*, 114 F.2d 873, 878 (7th Cir. 1940)).  Accordingly, the court permitted the insurers to argue that that the policies were void despite the incontestability clauses.  *Id.* at 996.  Notably, the Georgia and Florida incontestability statutes are similar in substance.  *Compare* Ga. Code Ann., § 33-27-3(a)(2)  *with* Fla. Stat. § 627.455.

at inception and in none of these cases did a court hold that a challenge based on lack of insurable interest is barred by the incontestability provision.

## II.   PRUCO'S DECLARATORY JUDGMENT CLAIM IS NOT TIME-BARRED

### A.   Applicable Limitations Period

"Actions for declaratory relief do not have their own statute of limitations."  *See Rosenbaum v. Becker & Poliakoff, P.A.*, Civ. No. 08-81004, 2010 WL 376309 at*8 (S.D. Fla. Jan. 26, 2010).  "[A] declaratory judgment action must be brought within the limitations period applicable to the substantive claim underlying the request for declaratory relief."  *Nat'l Franchisee Ass'n v. Burger King Corp.*, 715 F. Supp. 2d 1232, 1245 n.8 (S.D. Fla. 2010).  Here, the most analogous state law cause of action is one of fraud.[7/8]  The STOLI scheme alleged in the Complaint is based on the "fraudulent procurement of two $5 million insurance policies."  *See* Compl. ¶¶ 1, 2, 3, 21, 25.  The Guild Policies were procured by making the policies "appear legitimate and to conceal the scheme from Pruco."  *See id.* at ¶ 28.  Pruco further alleged that the misrepresentations "were part of a larger fraudulent scheme…to engage in a STOLI transaction through which the Guild Policies would be sold on the secondary market."  *See id.* at ¶¶ 56, 65.  Therefore, the most analogous cause of action is fraud.

Under Fla. Stat. § 95.11(3)(j), "[a] legal or equitable action founded on fraud" must be brought within four years.  However, the accrual of the action does not begin to run until "the time

---

[7]  In its motion to dismiss, U.S. Bank states that, "even if Count I could be viewed as a rescission claim, the limitation period on such claims is also four (4) years."  Mot. to Dismiss at 13.  As set forth in at pages 7-11, above, Pruco's declaratory judgment claim is not a rescission claim, no matter how badly U.S. Bank would like to characterize it as such.  Therefore, the statute of limitations for rescission claims has no bearing in this case.

[8]  Count I of the Complaint is not a cause of action for fraud, nor is it a veiled cause of action for fraud.  Nevertheless, the fraudulent procurement of the Guild Policies was an essential part of the STOLI scheme alleged in the Complaint.  The fraud was part of the artifice employed to hide the lack of insurable interest from Pruco.  Indeed, but for the fraudulent misrepresentations made to Pruco during the application process, Ms. Guild never would have qualified for $10 million of life insurance coverage.  Therefore, it was necessary to fraudulently procure the Guild Policies in furtherance of the STOLI scheme.

the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence…." *See* Fla. Stat. § 95.031(2)(a); *Fuss v. Gross*, 82 So. 3d 1082, 1083 (Fla. Dist. Ct. App. 2012) ("An action for fraud must be filed within four years [running] from the point when the plaintiff either discovers or should have discovered the facts giving rise to the cause of action with the exercise of due diligence."); *Marlborough Hldgs Grp., Ltd. v. Azimut-Benetti*, 2013 WL 375178 at *4 (11th Cir. Jan. 31, 2013) ("plaintiff must initiate an action 'founded upon fraud' … within four years of discovering the facts underlying the action, or within four years of when those facts should have been discovered with diligence.").

### B.   U.S. Bank Has Not Established That Pruco's Complaint is Time Barred

Dismissal of the Complaint on statute of limitations grounds would be premature.  Dismissal under Rule 12(b)(6) based on the statute of limitations is only proper if it is apparent from the face of the complaint that the claim is time barred.  *See State Farm Mut. Auto. Ins. Co. v. Kugler*, Civ. No. 11–80051, 2011 WL 4389915 at *13 (S.D. Fla. Sept. 21, 2011); *Bearse v. Main Street Invs.*, 220 F. Supp. 2d 1338, 1340 (M.D. Fla. 2002) ("the question of when fraud is discovered … cannot be decided on a motion to dismiss … unless the pleadings contain facts which demonstrate both a lack of diligence and a failure to file the complaint within four years from the aggrieved party's discovery of the fraud"); *Pavlisin v. Corr. Corp. of Am.*, Civ. No. 08-298, 2009 WL 1043918 at *4 (M.D. Fla. Apr. 17, 2009) (denying motion to dismiss when it was not clear from the complaint's face that causes of action were time barred).

U.S. Bank has not pointed to anything in the Complaint that shows conclusively that Pruco failed to file its Complaint within four years of discovering the STOLI scheme surrounding the Guild Policies.  The best U.S. Bank can muster is a reference to the fact the Pruco received a request to change the ownership and beneficiary of the Guild Policies to U.S. Bank in February 2008.  Mot. to Dismiss at 15.  These change request forms, however, did not reveal the STOLI nature of the

10

Guild Policies, nor did they result in an investigation by Pruco into the validity of the Guild Policies. Legitimately issued life insurance policies are frequently bought and sold in the secondary market for life insurance, and Pruco frequently records and processes ownership and beneficiary changes. Therefore, contrary to the assertions in U.S. Bank's motion to dismiss, Pruco's receipt of a change of ownership request, without any other evidence that the Guild Policies were part of a STOLI transaction, is not an event that would result in the accrual of Pruco's claim against U.S. Bank.[9] Moreover, the resolution of such an argument is inappropriate at the motion to dismiss stage of the litigation. *Jones v. Childers*, 18 F.3d 899, 907 (11th Cir. 1994) ("Whether an individual, by the exercise of reasonable diligence, should have known he had a cause of action against the defendant is … an issue of fact….") (internal quotation omitted); *Harbaugh v. Greslin*, Civ. No. 03-61674, 2004 WL 5589736 at *4 (S.D. Fla. Dec. 14, 2004) ("The Court finds that the issue of when Plaintiff became aware of the misrepresentations, whether during the summer of 1998 or the summer of 2000, is a questions of fact for the jury to determine.") (internal citations omitted); *Brugiere v. Credit Commerciale France*, 679 So. 2d 875, 877 (Fla. Dist. Ct. App. 1996) ("[W]hether one by exercise of reasonable diligence should have known he had a cause of action … is [a question] of fact which should be left to the jury.").  Accordingly, because it is not clear from the face of the Complaint that Pruco's claim is time-barred, dismissal of the Complaint would be inappropriate and premature.

U.S. Bank's statute of limitations argument is further based on the incorrect assertion that Pruco's cause of action accrued when the Guild Policies were issued.  Mot. to Dismiss at 13.  U.S. Bank's argument overlooks the delayed discovery doctrine.  Under this doctrine, "an action will not

---

[9]  As an owner of many life insurance policies purchased in the secondary market for life insurance, U.S. Bank submits change of ownership forms for every policy it purchases.  Presumably, every policy that U.S. Bank has purchased was not procured pursuant to a STOLI scheme.  Therefore, Pruco finds it hard to believe that U.S. Bank itself would agree with the assertion that a change of ownership request is evidence of the consummation of a STOLI transaction which would necessitate further investigation by the insurer.

begin running until the time the facts giving rise to the cause of action were discovered or should have been discovered."  *Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc*., 773 F. Supp. 2d 1317, 1323 (M.D. Fla. 2011) (internal quotation omitted).  If the delayed discovery doctrine applies to a cause of action, the cause of action "does not accrue until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action."  *Krawchenko v. Raymond James Fin. Servs*., Civ. No. 11–409, 2013 WL 489088 at *2 (M.D. Fla. Feb. 8, 2013); s*ee also Jones*, 18 F.3d at 906 ("a party is held to have been put on notice when he discovers, or reasonably should have discovered, facts alerting him of the existence of his cause of action.").

Here, the Complaint details a STOLI scheme that was carefully concealed from Pruco.  *See* Compl. ¶¶ 1-3.  Pruco has alleged facts related to this purposeful concealment, specifically:

- The STOLI scheme involved the creation of the Guild Trust "[i]n order to make the procurement of the Guild Policies appear legitimate and to conceal the scheme from Pruco." *Id*. at ¶ 28;

- "The scheme called for the procurement of $10 million in life insurance coverage on Ms. Guild's life with Pruco, and the concealment from Pruco of an understanding or agreement to sell the Guild Policies…." *Id.* at ¶ 38;

- "The Guild Trust was intended to conceal this true purpose [that the Guild Policies or an interest therein would be transferred to one or more STOLI investors] and to skirt applicable insurable interest laws." *Id*. at ¶ 39;

- The amount of insurance coverage was far greater than Pruco would have considered issuing "if it had known the truth about Ms. Guild's income, assets, and net worth." *Id*. at ¶ 44;

- Representations were made to Pruco that were known "to be false at the time [they] were made, and [were] made for the purpose of fraudulently inducing Pruco to issue vastly more life insurance coverage than what which Ms. Guild could have qualified for …." *Id*. at ¶ 53.

Pruco only recently was able to unravel the STOLI scheme that had been perpetrated against it.  Indeed, among other facts that Pruco learned during an investigation of the Guild Policies, Pruco received an affidavit from Mark Tarshis on December 12, 2012 which established that the Financial

12

Statement submitted to Pruco to justify the face amount of the Guild Policies was fraudulent.[10]  This

affidavit provided Pruco with a final piece of evidence that the Guild Policies had been procured in

bad faith, pursuant to a well-crafted STOLI scheme that was specifically intended to be concealed

from Pruco.  Pruco filed the Complaint on December 17, 2012.  Any contention by U.S. Bank that

Pruco "slept on its rights" or knew about the scheme that had been perpetrated against it for more

than four years is without merit.  Mot. to Dismiss at 8, 14-15; s*ee Kelly v. Davis*, Civ. No. 10-392,

2012 WL 967442 at*2 (N.D. Fla. Mar. 22, 2012) (because plaintiff asserted that she did not discover

the material facts until 2010, dismissal based on the statute of limitations was inappropriate).

### III.    THE ALLEGATIONS IN THE COMPLAINT, IF PROVEN, WOULD ESTABLISH THAT THE GUILD POLICIES WERE VOID *AB INITIO* AS ILLEGAL WAGERING CONTRACTS

U.S. Bank argues that because Ms. Guild's daughter was the ostensible beneficiary of the

Guild Policies when they were issued, Pruco cannot maintain a declaratory judgment action asserting

that the Guild Policies lacked an insurable interest at inception.  Mot. to Dismiss at 15-16.  This

argument overlooks the allegations in the Complaint which state that the Guild Policies were

procured in bad faith pursuant to a carefully concealed STOLI scheme.  Compl. ¶¶ 1, 3, 38, 75, 76-

77.  Pruco has alleged that the substance of the STOLI transaction outlined in the Complaint fails to

comply with Florida's insurable interest statute.  U.S. Bank's argument to the contrary – relying on

the form of the transaction only – is without merit.  Indeed, in a summary judgment ruling rendered

in November 2011, a court in this district, interpreting Florida law and applying it to a nearly

---

[10]  The veracity of the representations concerning Ms. Guild's net worth and financial wherewithal is of paramount importance in determining whether the Guild Policies lacked an insurable interest at inception.  Two of the three factors to be considered in determining whether a policy lacked an insurable interest at inception are:  (i) whether the premiums were paid by someone other than the insured; and (ii) whether the amount of coverage protected against an actual risk of financial loss.  *Pruco Life Ins. Co. v. Brasner*, No. 9:10-cv-80804-JIC, D.E. # 246, at 16-17 (S.D. Fla. Nov. 14, 2011) (attached hereto Exhibit C) (*Brasner II*).  If the representations made to Pruco regarding Ms. Guild's net worth had been accurate, then the Guild Policies could have protected against an actual risk of loss and it would have been much more likely that Ms. Guild paid premium for the Guild Policies.  In this case, however, the representations regarding Ms. Guild's net worth were vastly exaggerated.  Compl. ¶¶ 63-64.

identical STOLI transaction, found that the life insurance policy at issue in that case lacked an insurable interest at inception and was void *ab initio*. *Brasner II* at 15 (*see* Exh. C). The court's holding in *Brasner II* is both on point and directly applicable to the allegations in the Complaint concerning the Guild Policies.

The court in *Brasner II* held that, although the initial owner of the policy at issue was the insured and the initial beneficiary was her husband, a proper inquiry into the validity of a life insurance policy requires a court to look beyond the <u>form</u> of the transaction to examine its <u>s</u>ubstance. *Brasner II* at 14. Citing to the United States Supreme Court decision in *Grigsby v. Russell*, 222 U.S. 149, 156 (1911), the Court recognized that "a life insurance policy assignment may not serve as a cloak to a wagering agreement." *Id.* at 14-15. Finding the policy void *ab initio*, the *Brasner II* court held that Florida's insurable interest statute requires life insurance policies to be procured in "good faith" – a requirement that is violated when a wagering contract is veiled to feign compliance with the insurable interest statute. *Id.*

Specifically, the *Brasner II* court found that "[a] policy is procured in bad faith if it is procured with the intention that it will be assigned or otherwise transferred to a person or entity with no insurable interest in the life of the insured." *Brasner II* at 15. The decision specifically delineates three factors that each independently indicate that a life insurance policy was procured in bad faith: "(1) a pre-existing agreement or understanding that the policy is to be assigned to one having no insurable interest; (2) the payment of some or all of the premiums by someone other than the insured, and in particular, by the assignee; or (3) the lack of a risk of actual future loss." *Id.* at 17.

Contrary to the arguments in U.S. Bank's motion to dismiss, the *Brasner II* decision was rooted in well settled Florida law, re-affirming over seventy years of Florida decisions requiring that a life insurance policy be procured in good faith and not as a veiled wagering contract. *See Knott*,

136 Fla. at 196-97 (Fla. 1939) ("It is, no doubt the rule that if one takes out a policy of insurance

upon the life of another, in which he has no interest, the policy is a pure wager policy, and void.");

*Meerdink*, 137 Fla. at 592 (1939) ("[F]undamental principles of insurance … require that a person

shall have an insurable interest before he can insure: a policy issued when there is no such interest is

void.").  Further, the decision builds on more recent precedent, which applied the principles of *Knott*

and *Meerdink* in the STOLI context.  In *AXA Equitable Life Ins. Co. v. Infinity Fin. Group, LLC*, 608

F. Supp. 2d 1349, 1356 (S.D. Fla. 2009), the initial owners of the policies were the insureds, and the

initial beneficiaries of the policies were family members of the insureds.  *Id*. at 1352-53.  Plaintiff in

*Infinity Fin.* alleged, as Pruco has here, that the family members were listed as the initial policy

beneficiaries solely for the purpose of concealing the plan to sell the policy to a stranger-investor on

the secondary market.  *Id*. at 1356.  Defendants in *Infinity Fin.* moved to dismiss, arguing that an

insurable interest need only exist at the time the contract was made.  *Id*.  The court denied the

defendants' motion, stating:

> If the plaintiff's allegations are true, the insured[s] never planned to
> maintain the policies themselves.  Rather, the policies were procured only
> as part of a plan established from the outset, under which third parties
> were to pay the premiums for the policies and the insured[s] would
> immediately assign their policies to entities in which other parties would
> maintain interests.  Thus, the amended complaint adequately states
> allegations that, if proven, would render the policies void for lack of an
> insurable interest ….  The motion to dismiss Count II must therefore be
> denied.  *Id.*

The *Infinity Fin.* holding has been subsequently followed by other courts in this district.  *See*

*Sciaretta v. Lincoln Nat'l Life Ins. Co.*, --- F. Supp. 2d ---, 2012 WL 5195944 at *5 (S.D. Fla. Feb.

15, 2012) ("Therefore if the insurance policy at issue 'was procured with the intention that it will be

assigned or otherwise transferred to a person or entity with no insurable interest in the life of the

insured,' it is void *ab initio*.") (quoting *Infinity Fin.*, 608 F. Supp. 2d at 1357); *Brasner*, 2011 WL

134056 at *4 ("[P]laintiff's allegations, if proven, would demonstrate a lack of good faith and would

therefore render the policies void *ab initio* for lack of an insurable interest.").  Put simply, Pruco has alleged that the Guild Policies were procured in bad faith and with the understanding that they would ultimately benefit an investor lacking an insurable interest in Ms. Guild's life.  Compl. ¶¶ 1, 3, 38, 75, 76-77.  These allegations, if proven, would establish that the Guild Policies are void *ab initio*.

## IV.  U.S. BANK'S KNOWLEDGE OF AND INVOLVEMENT IN THE STOLI SCHEME IS IMMATERIAL

U.S. Bank argues that it did not have any knowledge or involvement in the STOLI scheme and that therefore "any fraud, crime, or improper 'STOLI scheme' that may have occurred during the procurement of the Policy, is ineffective to render the Policy void as to U.S. Bank's interests." Mot. to Dismiss at 18.  Florida law is clear that "[t]he effect of the assignment of a life insurance policy … is to place the assignee in the same status with respect to all rights and liabilities under it that the insured occupied before the transfer."  *Pendas v. Equitable Life Assurance Soc'y of U.S.*, 176 So. 104, 110 (Fla. 1937).  Since U.S. Bank takes the Guild Policies subject to the liabilities of its prior owners, U.S. Bank's argument fails regardless of its knowledge of any fraud or STOLI scheme.

U.S. Bank cites *Everglades Marina, Inc. v. Am. E. Dev. Corp.*, 374 So.2d 517 (Fla. 1979) for the proposition that any fraud that may have occurred in the procurement of the Guild Policies is ineffective to void U.S. Bank's interest in the Policies as a subsequent purchaser for value.  The facts and public policy concerns at issue in *Everglades*, however, are completely inapposite to the case at bar.  *Everglades* dealt with a subrogation claim between two property insurance carriers that resulted after a marina owner set fire to his own marina (committing arson) and caused damage to boats being stored in the marina.  Unlike here, where the validity of the Guild Policies has been challenged, it was "unrefuted [in *Everglades*] that on the date of the fire [the marina owner] had a policy in full force covering the marina premises and the boats of the appellees as third-party beneficiaries under the policy."  *Id*. at 518 (emphasis added).  The only legal question addressed by

16

the court was whether the marina owner's carrier, or the boat owners' carrier (who had paid the boat owners' claims, then sued the marina owner's carrier in subrogation), was ultimately liable for the boat owners' losses.  The court recognized Florida's public policy against allowing recovery under an insurance policy where the insured commits a criminal act that triggers the policy.  The court, however, did not extend that public policy exception to third party beneficiaries (the boat owners). Thus, the boat owners' carrier recovered from the marina owner's carrier in its subrogation action.

The facts at hand could hardly be more dissimilar.  We are dealing with a life insurance policy, the validity of which is in question and has not been established in the record.  U.S. Bank is not a covered third party beneficiary under the policy (as were the boat owners); it is a purchaser. U.S. Bank's purchase of the Guild Policies cannot breathe life into contracts that were illegal at their inception.  *Brasner*, 2011 WL 134056 at *4, n. 4 ("[a] policy that is void *ab initio*, however, is distinct from a policy that is voidable, and is not covered under the language of this *bona fide* purchaser defense.").  Therefore, U.S. Bank is not a *bona fide* purchaser of the Guild Policies, and its arguments based on the *bona fide* purchaser defense are unavailing.[11]

## V.   PUBLIC POLICY AND RECENT CASE LAW ESTABLISH THAT PRUCO IS ENTITLED TO RETAIN PREMIUM RECEIVED ON THE VOID *AB INITIO* GUILD POLICIES

There is no basis under Florida law to strike Pruco's request to retain premium should the Guild Policies be declared void *ab initio*.  Mot. to Dismiss at 18-19.  Indeed, when a contract has been found to be illegal and void *ab initio*, a court should not balance the equities between the parties to that void contract – instead the Court is simply to leave the parties where the Court has found them.  *See TTSI Irrev. Trust v. Reliastar Life Ins. Co.*, 60 So.3d 1148, 1149 (Fla. Dist. Ct.

---

[11]  Further, Pruco has alleged that the transfer to U.S. Bank "took place in connection with the sale of the beneficial interest in the Guild Policies to an investor with no insurable interest in Ms. Guild's life – exactly what had been understood and agreed upon by the Defendants since before the Guild Policies were issued."  Compl. ¶ 70-71. Therefore, at the very least, the extent of U.S. Bank's knowledge of and participation in the STOLI scheme is an unresolved question of fact, and therefore, U.S. Bank's motion to dismiss should be denied.  *Brasner*, 2011 WL 134056 at *4, n. 4 ("accordingly, even if [defendant's] *bona fide* assignee for value defense applied here, unanswered questions of law and fact preclude dismissal at this stage.").

App. 2011) ("as a general rule, contracts that are void as contrary to public policy will not be enforced by the courts <u>and the parties will be left as the court found them</u>.") (emphasis added).[12] The *TTSI* decision follows a well settled principle of Florida law that a court cannot craft a legal remedy (*i.e.* ordering the return of premium to U.S. Bank) pursuant to a contract that is void *ab initio* because that contract is illegal and violative of public policy. *See Citizens Bank & Trust Co. v. Mabry*, 102 Fla. 1084, 1089-1090 (1931) ("This then is the undoubted rule of law, that, when a contract is expressly prohibited by law, no court of justice will entertain an action upon it, or upon any rights growing out of it . . . .Courts will take notice of their own motion, too, of illegal contracts which come before them for adjudication <u>and will leave the parties where they have placed themselves.</u>") (internal quotations omitted) (emphasis added).[13]

Further, the *TTSI* decision and the sound reasoning underlying it are in line with other decisions around the country.  In *Penn Mut. Life Ins. Co. v. GreatBanc Trust Co.*, the defendants made an argument nearly identical to the argument that U.S. Bank makes here – that even though the insurer sought a declaration that a STOLI policy is void *ab initio*, the insurer was still required to return the premium because "rescission [was] the only available remedy under the facts alleged."

---

[12]  U.S. Bank argues that *TTSI* is inapplicable because "Pruco does not allege in the Complaint that U.S. Bank engaged in any fraud in connection with the Guild Policies."  Mot. to Dismiss at 20.  In support of this proposal, U.S. Bank states that in *TTSI*, "the court left the parties as it found them because the party seeking to enforce the contract is the only party who engaged in deceptive and misleading conduct at the time the contract was entered into." *Id.* (citing *TTSI*, 60 So.3d at 1150).  That is not the holding of *TTSI*.  The *TTSI* court held that "<u>as a general rule</u>, contracts that are void as contrary to public policy will not be enforced by the courts and the parties will be left as the court found them." *TTSI*, 60 So.3d at 1150 (emphasis added).  The *TTSI* court then went on to find that, under the facts of that case, there was no reason to depart from the general rule because "the party seeking to enforce the contract is the only party who engaged in deceptive and misleading conduct at the time the contract was entered into." *Id.*  U.S. Bank implies that a court may allow the insurer to retain premium only when the other party has engaged in deceptive or misleading conduct.  In fact, *TTSI* held that when a policy is void *ab initio*, the rule is that the parties are left where the court found them, unless there is a reason to depart from that general rule.  In this case, particularly at the motion to dismiss stage, there is no reason to depart from the general rule articulated by the court in *TTSI*.

[13]  *See also Schaal v. Race*, 135 So.2d 252, 257 (Fla. Dist. Ct. App. 1961) ("An illegal contract is, as a rule, void – not merely voidable . . . [n]o action can be maintained upon it, either at law or in equity.") (quoting <u>Pomeroy's Specific Performance of Contracts</u>, 3d Ed., at 642 § 280 *Illegal Contracts Void*); *D&L Harrod v. U.S. Precast Corp.*, 322 So. 2d 630, 631 (Fla. Dist. Ct. App. 1975) ("There is no legal remedy for that which is illegal itself."); *Kulla v. E.F. Hutton & Co., Inc.*, 426 So.2d 1055, 1057 (Fla. Dist. Ct. App. 1983) ("[T]he law will not lend its support to a claim founded on its own violation.") (internal quotations omitted).

18

*Penn Mut.*, Civ. No. 09-6366, 2012 WL 2074789 at *4 (N.D. Ill. June 8, 2012).  The *Penn Mutual* court found in favor of the carrier, stating that "if the contract is indeed illegal from its inception, then (other than declaring the contract void) courts will leave the parties where they are…."  *Id.* (internal citation omitted).  The court's reasoning in *Penn Mutual* is sound.  A court can give no effect to a transaction that is against public policy – it must leave the parties to an illegal contract where the court found them.

In *PHL Variable Ins. Co. v. Lucille E. Morello 2007 Irrevocable Trust,* Civ. No. 08-572, 2010 WL 2539755 at *4-5 (D. Minn. Mar. 2, 2010), the court held also held that the insurer must be permitted to retain premium paid for a STOLI policy, on the grounds that "[a] contrary rule would be an invitation to commit fraud:"

> If all moneys thus voluntarily paid can be recovered or must be returned by the insurer as a condition precedent to pleading the fraud as a defense, a party who contemplates obtaining insurance by false representations may well feel that he is … entering upon a transaction in which he stands to gain large returns without any possibility of endangering his investment.  If the fraud is never discovered, the beneficiary under the policy which will be issued to him will receive the full benefit of the contract.  If it by chance is discovered, his estate will receive back all that has been paid by the guilty party, and the trouble and expense attending upon the transaction will be thrown upon the innocent party.

*Id*. at *5 *aff'd* 645 F.3d 965 (8th Cir. 2011); *see also Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 799-800 (6th Cir. 2009) (holding that the receiver of life settlement company could not recover premiums paid to insurer for fraudulently obtained life insurance policies under unjust enrichment theory).  The weight of authority, both in Florida and across the country, permits an insurer to retain the premium paid to it when a life insurance policy is declared void *ab initio*.  U.S. Bank's motion does not provide any reason for the Court to depart from this authority.

U.S. Bank's argument primarily relies on the case of *PHL Variable Ins. Co. v. Faye Keith Jolly Irrev. Life Ins. Trust*, 460 F. App'x 899, 902 (11th Cir. Mar. 14, 2012).  The *Jolly* case,

however, offers no guidance in this matter.  In *Jolly*, the insurance carrier was seeking to <u>rescind</u> the insurance policy at issue, and in <u>rescission</u> cases, Georgia law requires that the insurance carrier return the premiums that were paid to it for the policy.  *Id.*  This case is not a rescission case.[14]  U.S. Bank then proceeds to cite several other cases in which non-life insurance policies were rescinded pursuant to Fla. Stat. § 627.409.  Mot. to Dismiss at 19.  These cases involve misrepresentations, in which the insurer could either rescind the policy and refund the premium, or to waive the misrepresentation, keep the premium, and accept coverage under the policy.[15]  Here, however, Pruco does not seek to avoid liability for a claim by rescinding for any reason, much less due to an entirely unrelated misrepresentation.  Rather, Pruco, having discovered a policy fraudulently procured as part of a STOLI scheme, seeks to have that policy declared void *ab initio* for lack of an insurable interest.  Therefore, Pruco's request to retain the premium that has been paid on the Guild Policies is proper.

<u>**CONCLUSION**</u>

For the reasons stated above, U.S. Bank's motion to dismiss should be denied.  Alternatively, to the extent the Court finds that Pruco's Complaint is deficient, Pruco requests that this Court grant it leave to file an amended complaint to cure any deficiencies.  *See Wagner v. Daewoo Heavy Indus. Am. Corp.,* 314 F.3d 541, 542 (11th Cir. 2002).

---

[14]  It should be noted, however, that even in rescission cases, courts have found that the egregious fraud that is associated with STOLI transactions may necessitate an equitable ruling entitling the carrier to retain premiums.  *See PHL Variable Ins.Co. v. P. Bowie 2008 Irrev. Trust ex rel. Baldi*, --- F. Supp. 2d ----, 2012 WL 3860553 at *5 (D.R.I. Sept. 5, 2012) ("This Court does not believe that the law would or should allow an entity to commit an intentional and calculated fraud upon [Plaintiff] and walk away unscathed while the innocent party bears the financial burden of the fraud.  This Court agrees with the district judge in [*Morello*] who reasoned that public policy requires allowing an insurer to seek to retain premiums, as '[a] contrary rule would be an invitation to commit fraud'.") (citing *Morello*, 2010 WL 2539755 at * 4); *PHL Variable Ins. Co. v. Clifton Wright Family Ins. Trust*, Civ. No. 09-2344, 2010 WL 1445186 at *4 (S.D. Cal. Apr. 12, 2010) (Court "may award consequential damages to a defrauded insurer seeking rescission of an insurance policy.").

[15]  In *Gonzalez v. Eagle Ins. Co.*, 948 So.2d 1 (Fla. Dist. Ct. App 2006)*,* for example, the insurer sought to rescind an automobile policy because the insured "failed to disclose her son as an additional driver" on her automobile policy, even though the claim was entirely unrelated to that omission.  *Gonzalez*, 948 So.2d at 2.

Dated:  February 25, 2013                PETT FURMAN, PL
                                         Attorneys for Plaintiff
                                         2101 N.W. Corporate Blvd., Suite 316
                                         Boca Raton, FL 33431
                                         (561) 994-4311
                                         (561) 982-8985 (fax)


                                         By:___s/Wendy L. Furman
                                              Wendy L. Furman
                                              Fla. Bar No. 0085146
                                              wfurman@pettfurman.com


                                         *Of Counsel*
                                         Stephen A. Serfass *(Admitted Pro Hac Vice)*
                                         Nolan B. Tully *(Admitted Pro Hac Vice)*
                                         **DRINKER BIDDLE & REATH LLP**
                                         One Logan Square, Ste. 2000
                                         Philadelphia, PA 19103-6996
                                         (215) 988-2700
                                         Stephen.serfass@dbr.com
                                         Nolan.tully@dbr.com

                                         *Attorneys for Plaintiff,*
                                         *Pruco Life Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 25, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

> John K. Shubin, Esq.
> Juan J. Farach, Jr. Esq.
> Shubin & Bass, P.A.
> 46 S.W. 1st Street, Third Floor
> Miami, FL 33130
> jshubin@shubinbass.com
> jfarach@shubinbass.com
>
> *Counsel for Defendant, U.S. Bank, N.A.,*
> *as securities intermediary*

> s/Wendy L. Furman
> Wendy L. Furman

22